UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Keith McCaa,

               Plaintiff,        Case No. 25-cv-10533

v.                                    Judith E. Levy
                                    United States District Judge

Martin, *et al.*,

                                    Mag. Judge Elizabeth A. Stafford

               Defendants.

_____/

**OPINION AND ORDER OF PARTIAL DISMISSAL**

This is a *pro se* prisoner civil rights case. Plaintiff Keith McCaa is a Michigan state prisoner who is incarcerated at Macomb Correctional Facility in Lenox Township, Michigan. In the complaint, he alleges constitutional violations and asserts claims under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff sues four Defendants, all of whom are Michigan Department of Corrections (MDOC) employees, in their individual and official capacities: Corrections Officers Martin and Randolph and two unknown corrections officers identified in the complaint as John Doe and Jane Doe. (*Id.* at PageID.2–3.) Plaintiff seeks compensatory and punitive damages. (*Id.* at PageID.8.) He has been granted leave to

proceed *in forma pauperis*, which means that he has been granted permission to proceed without prepayment of the filing fee for this action. (ECF No. 4.) *See* 28 U.S.C. § 1915(a).

I. **Background**

Plaintiff alleges in the complaint that "at around 9:26-9:30pm" on February 2, 2022, he was incarcerated at Saginaw Correctional Facility and went to get a book "a few minutes before count time." (ECF No. 1, PageID.18.) Martin and Randolph told Plaintiff to return to his cell. (*Id.*) They "became mad and impatient at the normal rate of speed that the plaintiff used" to return to his cell. (*Id.*) When Plaintiff "didn't speed up like the Defendants wanted him to," Martin stated: "Okay you don't want to speed up? Get on the ground you're going to segregation." (*Id.*) Martin and Randolph "started yelling obscene language and approaching the plaintiff aggressively." (*Id.*) Randolph pulled out his taser. (*Id.*) Plaintiff "did as he was told and put his hands in the air and got on the ground." (*Id.*)

When Plaintiff was on the ground, Martin placed handcuffs on Plaintiff. (*Id.*) Martin "grabbed [Plaintiff's] wrist bending it unnecessarily hard." (*Id.*) Martin continued to do so after Plaintiff

2

commented about the way in which Martin was bending his wrist. (*Id.*) Plaintiff "tried to adjust his body to reduce the severe pain in his wrist from . . . Martin twisting and bending at this time, both wrist[s]." (*Id.*) Plaintiff alleges that "Martin used excessive force for no reason." (*Id.*)

Martin "attempted to pick Plaintiff up by the handcuffs." (*Id.*) As Plaintiff was "getting to his feet in restraints, Plaintiff heard . . . Randolph say 'stop resisting' and then tased" Plaintiff. (*Id.*) Plaintiff fell to the ground, hit his head, and lost consciousness. (*Id.*) When he regained consciousness, he was confused, "didn't know what was going on," and was "laying face down in his own vomit in handcuffs that were on really tight." (*Id.*) "[A] lot" of corrections officers "were kneeling on his neck and back causing pain and a shortness of breath." (*Id.*) "John/Jane Doe" then tased Plaintiff while he was "restrained and handcuffed." (*Id.*) Plaintiff asked unknown corrections officers who "picked him up off of the ground to adjust the handcuffs because they were to[o] tight and hurting his wrist." (*Id.*) At that point, "John/Jane Doe," who was walking behind Plaintiff and holding the handcuffs, "began bending the plaintiff[']s wrist while he was being escorted out of the building." (*Id.* at PageID.18–19.) Plaintiff was taken to medical

3

followed by segregation. (*Id.* at PageID.19.) In segregation, Plaintiff was "placed in the shower where he was left with the handcuffs on really tight and vomit all over him, no running water, and no place to use the restroom for over two hours." (*Id.*)

While in segregation between February 3, 2022 and February 6, 2022, Plaintiff requested grievance and medical forms "but was told they didn't have any forms due to waiting for the supply truck." (*Id.*) In addition, Randolph regularly worked in segregation during that time and harassed Plaintiff. (*Id.*) Plaintiff asked Randolph for a grievance form "on multiple occasions," and Randolph refused. (*Id.*)

Plaintiff was released from segregation on February 16, 2022. (*Id.*) He submitted a grievance regarding the incident on February 2, 2022 and "a medical kite for the numbness and pain in both wrist[s]." (*Id.*) Plaintiff alleges that "when he turned in his step I grievance he was transferred to another facility" on March 4, 2022: Kinross Correctional Facility. (*Id.* at PageID.6, 19.) On May 19, 2022, "before receiving a response," Plaintiff was transferred to Oaks Correctional Facility. (*Id.* at PageID.6.) Plaintiff wrote to the grievance coordinator at Saginaw Correctional Facility regarding his grievance at Step I and to request "a

4

step II grievance appeal." (*Id.* at PageID.19–20.) Plaintiff eventually "received a response in which [he] was told that his step II grievance was denied because he didn't meet the time limit given for a step II grievance." (*Id.* at PageID.20.) On June 1, 2022, Plaintiff "wrote a step III grievance and sent it to Lansing and also wrote the attorney general, and ombudsman office . . . informing them of the situation and asking for an investigation." (*Id.*) Plaintiff alleges that on September 12, 2022—"just days after receiving a letter from the Ombudsman's office informing him that an investigation has been opened"—Plaintiff "receive[d] a step II grievance form from the grievance coordinator at Saginaw Correctional Facility back dated 7 months." (*Id.*) Plaintiff states that he "has exhausted all (MDOC) remedies through the grievance filing process." (*Id.*)

In the form complaint, Plaintiff alleges that his rights under the First, Eighth, and Ninth Amendments were violated. (*Id.* at PageID.4, 17.) He might also allege a violation of his rights under the Fourteenth Amendment. (*Id.* at PageID.6.) Plaintiff appears to assert that he suffered injuries to his wrists and spine. (*Id.* at PageID.8.) Plaintiff seeks compensatory and punitive damages from each Defendant. (*Id.*)

5

## II. Legal Standard

Under the Prison Litigation Reform Act of 1996 (PLRA), the Court is required to dismiss a case brought by a prisoner proceeding *in forma pauperis* if the Court determines that "the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court also must dismiss, in part or in full, "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)–(b).

Federal Rule of Civil Procedure 8(a) requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). This rule is intended to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in

original) (internal citation omitted). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To state a civil rights claim under § 1983, a plaintiff must allege that (1) they were deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978); *see Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 468 (6th Cir. 2022). "Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that "the allegations of the pro se complaint" are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").

### III. Discussion

As noted above, Plaintiff sues Defendants—four MDOC employees—in their individual and official capacities. (ECF No. 1, PageID.2–3.) Plaintiff seeks only monetary relief from each Defendant.

7

(*Id.* at PageID.8.)

Plaintiff's claims against Defendants cannot proceed to the extent he sues them in their official capacities for monetary damages. "Sovereign immunity generally bars lawsuits against States or their agencies." *Mikel v. Quin*, 58 F.4th 252, 256 (6th Cir. 2023) (citing *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 585–89 (2022)), *cert. denied sub nom. Mikel v. Nichols*, 143 S. Ct. 2660 (2023). The Sixth Circuit has

> held that a suit for monetary damages against a[ state official] in his or her official capacity is deemed to be an action against the state whose officers are nominal defendants. Such a suit . . . is barred by the Eleventh Amendment unless the state expressly consents to being sued and therefore waives its sovereign immunity. [*Doe v. Wigginton*, 21 F.3d 733, 736–37 (6th Cir. 1994).] The state of Michigan, however, has not consented to being sued in civil rights actions in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

*Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *Wigginton*, 21 F.3d at 737 ("[S]ince a[n] official-capacity claim for retroactive relief [usually in the form of money damages] is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment."); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) ("The States' immunity from suits in

federal court . . . applies to actions against state officials sued in their official capacity for money damages." (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 623 (2002); *Edelman v. Jordan*, 415 U.S. 651, 664–66 (1974))). Moreover, "while Congress can abrogate a State's sovereign immunity to enforce the Fourteenth Amendment, it did not do so when it enacted § 1983." *Mikel*, 58 F.4th at 256 (citing *Quern v. Jordan*, 440 U.S. 332, 342–43 (1979)). Thus, Plaintiff's claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment. *See Johnson*, 357 F.3d at 545 (upholding the district court's dismissal of a *pro se* prisoner's complaint because the district court correctly determined that the plaintiff's claim against a defendant "in her official capacity" seeking "solely monetary relief" was "barred by the Eleventh Amendment"); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]ll of the officials are entitled to Eleventh Amendment immunity on [the] claims for damages against them in their official capacities" brought by the plaintiff, a *pro se* prisoner. (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009))); *Mikel*, 58 F.4th at 257 ("[I]f [the plaintiff] had sought money damages from [the defendant, a state official,] in her official capacity, sovereign

9

immunity would have stood in her way." (citing *Ernst*, 427 F.3d at 358); *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) ("Insofar as [the plaintiff] is suing [the individual defendants] in their official capacities for money damages, her claim is . . . barred by the Eleventh Amendment." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))). But Plaintiff's remaining claims proceed.

## IV. Conclusion

For the reasons set forth above, the Court DISMISSES Plaintiff's claims for monetary damages against all Defendants in their official capacities based on sovereign immunity. Plaintiff's remaining claims survive initial screening under §§ 1997e(c), 1915(e)(2)(B), and 1915A(a)–(b).

IT IS SO ORDERED.

Dated: May 5, 2025                     s/Judith E. Levy
    Ann Arbor, Michigan          JUDITH E. LEVY
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 5, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager

11